Erin Rose Ronstadt, SBN 028362
Clayton Warren Richards, SBN 029054
RONSTADT LAW, PLLC
P.O. Box 34145
Phoenix AZ 85067
Phone: (602) 615-0050
Fax: (602) 761-4443
erin@ronstadtlaw.com
clayton@ronstadtlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Torry Campbell, | No. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT** |
| Lincoln Life Assurance Company of Boston, a plan fiduciary; and Symantec Corp. Group Welfare Benefit Plan, an ERISA benefit plan, | |
| Defendants. | |

For his claims against Symantec Corp. Group Welfare Benefit Plan (the "Plan") and Lincoln Life Assurance Company of Boston ("Lincoln") (collectively "Defendants"), Plaintiff Torry Campbell ("Mr. Campbell" or "Plaintiff") alleges as follows:

## *Jurisdiction, Venue, and Parties*

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. The Plan is a purported ERISA benefit plan established for the benefit of its employees and maintained by Symantec Corporation, which was later acquired by Broadcom, Inc., which then changed its name to NortonLifeLock, Inc. (Collectively "Symantec").

3. Mr. Campbell was a participant and beneficiary of the Plan as an employee of Symantec.

4. Lincoln is a third-party claims administrator for the Plan.

5. Lincoln is a Plan fiduciary.

6. Under the Plan, Lincoln fully insures eligible employees of Symantec for long-term disability ("LTD") benefits pursuant to Policy Number GF3-860-066125-01 (the "Policy").

7. At the time Mr. Campbell sought LTD benefits under the Plan, Lincoln administered claims under the Plan, acted on behalf of the Plan, and acted as an agent of the Plan to make final decisions regarding the payment of disability benefits for the Plan.

8. Lincoln has a fiduciary duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

9. Mr. Campbell resides in Maricopa County, Arizona.

10. The Plan has its principal place of business and was issued in the State of California.

11. Lincoln has its principal place of business in the State of Kentucky.

12. Defendants are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

15. Mr. Campbell worked as a Senior Director/Product Manager for Symantec from October 10, 2016 through his last date of work on November 27, 2018.

16. Mr. Campbell stopped working due to multiple medical conditions that render him totally Disabled under the Plan.

17. His medical conditions cause a host of symptoms that severely diminish his ability and capacity to work.

18. Mr. Campbell's treating physicians and other providers have verified and confirmed his medical conditions using objective examination findings and diagnostic testing.

19. Mr. Campbell is actively in treatment for his medical conditions.

20. Based on his collective medical conditions, Mr. Campbell is Disabled as defined by the Plan.

21. Under the Plan, from May 26, 2019 through May 25, 2021, as a result of Injury or Sickness, Mr. Campbell must be unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way.

22. Under the Plan, from May 26, 2021 and ongoing, Mr. Campbell must be unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.

23. On or around his last date of work, Mr. Campbell applied for short-term disability ("STD") benefits, which Lincoln approved through the maximum STD benefit date.

24. In April 2019, Mr. Campbell initiated his claim for LTD benefits.

25. On July 23, 2019, Lincoln denied Mr. Campbell's LTD claim (the "First Denial").

26. In reaching the First Denial, Lincoln failed to conduct a full and fair review in a myriad of ways. While not an exhaustive list, Lincoln:
- Misapplied and misrepresented the Plan language, including the definition of Disability, in evaluating Mr. Campbell's claim;
- Disregarded Mr. Campbell's credible symptomology and medical findings;
- Misrepresented Mr. Campbell's treating provider assessments in written and telephonic communications;
- Preemptively denied Mr. Campbell's claim before having all relevant information, including its own medical file reviewers' finalized reports;
- Relied excessively, if not exclusively, on its biased and inadequate medical file reviewers;
- Provided false or misleading information to Mr. Campbell's treating providers; and
- Failed to conduct a meaningful vocational analysis of Mr. Campbell's Own Occupation.

-3-

27. With the assistance of legal counsel, Mr. Campbell appealed the First Denial on April 20, 2020.

28. Had Lincoln investigated the claim, then the First Denial would have never occurred.

29. On June 8, 2020, Lincoln approved Mr. Campbell's LTD benefits under the Own Occupation definition of Disability.

30. Lincoln's First Denial caused delay of over a year in Mr. Campbell receiving the LTD benefits to which he was entitled.

31. Before leaving work due to Disability, Mr. Campbell was the breadwinner for his wife and young twin boys. He suffered financially in a multitude of ways and almost lost his marriage due to Lincoln's First Denial.

32. Mr. Campbell was a high wage earner; he is informed and believes his monthly LTD benefit of $13,890.50 motivated Lincoln to set aside minimal reserves for paying the claim and to otherwise find reasons to deny the claim.

33. In June 2020, Lincoln requested updated information from Mr. Campbell, which he promptly provided to Lincoln in July 2020.

34. The change in definition of Disability under the Plan, from 'Own Occupation' to 'Any Occupation', was set to occur as of May 26, 2021.

35. Plaintiff's legal counsel began reaching out to Lincoln well in advance of the change in definition of Disability under the Plan.

36. On December 9, 2020, Plaintiff's legal counsel left a detailed voice message for Lincoln's Claims Manager, Katherine Marks, informing her that Mr. Campbell had new treating providers and requesting a return call.

37. Lincoln never returned Plaintiff counsel's December 9, 2020 voice message.

38. On April 27, 2021, May 3, 2021, and May 11, 2021, Plaintiff's counsel called Lincoln and left Ms. Marks additional voice messages requesting status of the claim and reiterating that Mr. Campbell has new treating providers and medical conditions.

39. Lincoln did not return any of Plaintiff legal counsel's telephone messages until May 12, 2021, at which time Ms. Marks was again informed that Mr. Campbell has seen several new treating providers, undergone additional testing, and has new diagnoses.

40. During this May 12, 2021 conversation, Ms. Marks informed legal counsel's office manager, Merry Martin, for the first time, that Lincoln was conducting a review of the file under the "Any Occupation" definition of Disability and confirmed for Ms. Martin that Lincoln did not have this updated information.

41. In a letter dated May 19, 2021, Plaintiff's counsel sent a letter to Ms. Marks and Lincoln memorializing our several efforts to contact them, including our various requests to be informed as to the status of Mr. Campbell's LTD claim. (Exhibit 1).

42. In that May 19, 2021 letter, Plaintiff's counsel offered to facilitate Lincoln's review in whatever way was needed and to provide information if Lincoln would just ask. (See Exhibit 1).

43. Lincoln's complete failure to communicate with Mr. Campbell before May 19, 2021 left him in the dark as to whether Lincoln was evaluating his claim and what information was needed.

44. Lincoln never responded to Plaintiff's May 19, 2021 letter.

45. In a letter dated May 25, 2021, Lincoln terminated Mr. Campbell's LTD benefits under the "Any Occupation" definition of Disability (the "Second Denial").

46. In reaching the Second Denial, Lincoln failed to conduct a full and fair review and made several of the same errors that occurred in the First Denial, including but not limited to:
- Misapplying and misrepresenting the Plan language, including the definition of Disability, again;
- Disregarding Mr. Campbell's credible symptomology and medical findings;
- Misrepresenting and disregarding Mr. Campbell's treating provider assessments, and failing to obtain updated treating assessments for its 'Any Occupation' review;
- Preemptively denying Mr. Campbell's claim before gathering all relevant information, including medical evidence demonstrating new treating providers, additional testing, and new diagnoses; and

- Relying exclusively on its biased and inadequate medical file reviewer(s) without providing Mr. Campbell with an opportunity to respond.

47. In a June 3, 2021 letter to Lincoln, Mr. Campbell requested all relevant documents, revoked all authorizations, and provided notice of a deficient adverse benefit determination and Lincoln's failure to follow claims procedures. (Exhibit 2).

48. Plaintiff demanded a response by June 14, 2021. (Exhibit 2).

49. By June 23, 2021, Lincoln has still failed to respond to Mr. Campbell's June 3, 2021 letter.

50. As part of Lincoln's ERISA claims procedure violations, it "failed to consider readily available material evidence of which it was put on notice," and "the review process failed to conform to the directives of ERISA and the Plan's own terms." *See Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 17 (4th Cir. 2014). Similar to *Harrison*, Lincoln abused its discretion by failing to obtain all available evidence relevant to Mr. Campbell's claim. *See id.* In *Harrison*, the Court found that the insurer did not meet the "full and fair review" requirements imposed by ERISA in 29 U.S.C. § 1133. *Id.* The insurer "chose to remain willfully blind to readily available information that may well have confirmed [Mr. Campbell's] theory of disability." *See id* at *20.

51. Further, Lincoln failed to engage in a good faith exchange of information with Mr. Campbell during its claims handling and resultant termination of benefits. This includes Lincoln's multiple failures to return Plaintiff's telephone calls, inform Plaintiff of its current "Any Occupation" review, and obtain updated medical evidence of which it was put on notice.

52. In the June 3, 2021 letter (Exhibit 2), Plaintiff requested a written explanation of Lincoln's violations of ERISA and the plan. Pursuant to 29 C.F.R. § 2560.503-1(l)(2)(ii), Lincoln was required to provide such explanation within ten (10) days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted.

53. Lincoln has failed to timely respond to Plaintiff's June 3, 2021 letter and, therefore, under 29 C.F.R. § 2560.503-1(l)(2)(ii), Plaintiff is deemed to have exhausted the administrative remedies available under the Plan. "Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* at (i).

54. Lincoln failed to provide reasonable claims procedures. It did so, in part, by: refusing to evaluate the claim before the Second Denial, which includes failing to secure updated medical evidence and failing to exercise its right to secure an independent medical examination if one was needed; refusing to engage in a good faith exchange with Plaintiff about its claim review; and refusing to give Mr. Campbell reasonable notice of its review and need for information.

55. While Plaintiff does not concede an abuse of discretion standard of review, Lincoln certainly abused its discretion and acted in its own best financial interests when issuing the Second Denial, depriving Mr. Campbell of a full and fair review in violation of 29 C.F.R. § 2560.503-1.

56. Lincoln exhibited a pattern and practice in the Second Denial, whereby it denied Mr. Campbell's claim for a second time without bothering to evaluate the claim.

57. Mr. Campbell has not worked since November 27, 2018 due to his medical conditions.

58. Mr. Campbell is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation and, therefore, comes within the definition of Disability under the Plan.

59. The Plan was issued in California, so Lincoln is without discretionary authority.

60. Mr. Campbell is excused from exhausting administrative remedies under the Plan pursuant to 29 C.F.R. § 2560.503-1(l)(2)(ii).

61. Mr. Campbell timely files this lawsuit.

## COUNT I

**(Recovery of LTD Benefits and Request for  
Immediate Review pursuant to 29 C.F.R. § 2560.503-1(l)(2)(ii))  
(Defendants Lincoln and the Plan)**

62. All other paragraphs are incorporated by reference.

63. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

64. The Plan represents LTD coverage and a promise to provide these benefits until Mr. Campbell is no longer Disabled under the terms of the Plan.

65. Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

66. Mr. Campbell has exhausted his administrative remedies under 29 C.F.R. § 2560.503-1(l)(2)(ii) and is further entitled to a de novo review of his claim, as well as his past-due benefits, until a proper review is completed:

> (T)he administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on *de minimis* violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant. This exception is not available if the violation is part of a pattern or practice of violations by the plan. The claimant may request a written explanation of the violation from the plan, and the plan must provide such explanation within 10 days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted. If a court rejects the claimant's request for immediate review under paragraph (l)(2)(i) of this section on the basis that the plan met the standards for the exception under this paragraph (l)(2)(ii), the claim shall be considered as re-filed on appeal upon the plan's receipt of the decision of the court. Within a reasonable time after the receipt of the decision, the plan shall provide the claimant with notice of the resubmission.

67. Based on Lincoln's conduct, Mr. Campbell's claim is deemed denied without the need to exhaust futile administrative remedies.

68. Prior to the termination of Mr. Campbell's benefits, Lincoln inexcusably failed to investigate the claim and to communicate in a "good faith exchange of information" with Plaintiff. Plaintiff notified Lincoln on at least five occasions from December 9, 2020 to May 19, 2021 that he established care with several new treating providers, had undergone additional testing, and had new diagnoses—information that would clearly be relevant to an analysis of the change in definition of Disability. Lincoln ignored Plaintiff.

69. Lincoln secured file reviews without first securing updated medical evidence, which it admitted in the Second Denial.

70. Lincoln failed to obtain Mr. Campbell's treating provider assessments. Instead, it relied exclusively on its medical file reviewers and non-examining consultants.

71. Lincoln violated the Plan by inexcusably failing to have Mr. Campbell examined.

72. Lincoln had every opportunity to communicate with Plaintiff about its review under the Plan but failed to do so without justification. Lincoln should have engaged in a good faith exchange of information and reviewed the claim in the best interests of Mr. Campbell prior to issuing the Second Denial.

73. Lincoln's violations are more than *de minimis*. Lincoln stopped Mr. Campbell's benefits without warning, leaving him without a monthly abruptly and placing him in a similar position to what it had done to him previously with the First Denial. As Plaintiff's legal counsel explained to Lincoln, "Mr. Campbell simply does not have the luxury of a year or more of appealing with Lincoln in light of its clear abdication of ERISA and the fact Lincoln is assuredly going to deny the claim regardless of the evidence." (Exhibit 2).

74. Lincoln Financial has a pattern or practice of bad faith conduct and of violating ERISA and the plan. Lincoln's history of parsimonious claims handling is directly relevant to this Court's review of the claim and consideration of Plaintiff's request for immediate review under ERISA.

75. Mr. Campbell is a victim of Lincoln's corporate efforts to drive profitability.

76. Plaintiff is informed and believes that Lincoln did not set aside adequate reserves to pay Mr. Campbell's claim.

77. On information and belief, Lincoln reserved Plaintiff's claim for no more than 24 months and is now trying to force Mr. Campbell into a protracted appeals process in violation of ERISA, because doing so allows Lincoln to avoid significant financial liability presented by Plaintiff's claim in this fiscal year. For instance, due to the First Denial, Lincoln avoided payment on the claim for over a year. It did not pay Mr. Campbell interest, and it got to keep its money while forcing Mr. Campbell through the appeals process. Mr. Campbell nearly lost everything as a result of the delay. But Lincoln only profited from its bad faith conduct and delay in approving and investigating Mr. Campbell's claim.

78. Lincoln used in-house reviewers for evaluating Mr. Campbell's claim because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Mr. Campbell's benefits.

79. Plaintiff is informed and believes Lincoln provides its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

80. Lincoln's biased medical consultants mischaracterize evidence to support their conclusions that Mr. Campbell can work in "Any Occupation." In any event, the opinions are based on an incomplete review of the medical evidence.

81. The Plan "must provide [] explanation within 10 days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted." Defendants failed to timely provide any explanation in response to Mr. Campbell's request (Exhibit 2).

82. Mr. Campbell is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Lincoln's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and financial motivations and circumstances surrounding Lincoln's decision to terminate Mr. Campbell's LTD claim.

83. Under the de novo standard of review, Mr. Campbell is entitled to discovery regarding, among other things, the credibility of Lincoln's medical reviews and Lincoln's

lack of partiality due to its financial conflicts of interest. *See Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

84. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Campbell is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

85. Mr. Campbell is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated and seeks all past-due benefits as a result of Lincoln's ERISA violations.

86. Under 29 C.F.R. § 2560.503-1(l)(2)(i), "[Mr. Campbell] is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

87. Pursuant to 29 U.S.C. § 1132(g), Mr. Campbell is entitled to recover his attorneys' fees and costs incurred herein.

88. Mr. Campbell is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

**WHEREFORE**, Mr. Campbell prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past and future owed LTD benefits under the terms of the Plan;

B. Clarifying and determining Mr. Campbell's rights to future benefits under the terms of the Plan;

C. For any other benefits Mr. Campbell may be entitled to receive under the Plan due to his disability;

D. Any equitable relief that would be proper as a result of Lincoln's breaches of fiduciary duty;

E. An award of Mr. Campbell's attorneys' fees and costs;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 24th day of June, 2021.

RONSTADT LAW, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Clayton W. Richards
Attorneys for Plaintiff

-12-